The next case this morning is 5 23 1067 people versus Cooley arguing for the appellant is Antonio Madrigal jr. Arguing for the athlete is Kara jones. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning council morning, your honors. As you can see, justice Welch is not present. He will, he's unavailable this morning. He will be listening to the recording of the oral argument and participating in our disposition. Appellant, if you are ready to proceed, you may do so morning, your honors council and may it please the court. I'm assistant a right that is enshrined in our constitution is our right to representation. Every person in this room is entitled to be represented in criminal prosecutions, but this doesn't mean that we're entitled to ineffective and deficient, deficient representation. Mr Cooley never stood a chance when the jury heard damaging testimony of his drug usage and the sole cause of this was his own defense counsel's fault. Now, the testimony that I referenced comes from the cross examination of the state's witness, Marshall Hunter. And it went like this. Did he call you? Yeah. Okay. And he just said, hey, come over. Let's hang out. Yeah. Smoke some meth. Okay. And you were smoking meth that day. Yeah. So was he. But it didn't stop there. The second instance went like this. You said you were smoking meth. Was that did you smoke inside the trailer? No, sir. Okay. We were smoking it at his house now under the strickland factors. In order to prove an effective assistance of counsel, a defendant must show that one, the attorney's performance fell below an objective standard of reasonableness and two. But for the council's deficient performance, the outcome of the proceeding would have been different. Uh, this is not a possible manner of forming of questions that can be considered. The state suggests this could be considered as challenging the credibility of the witness. But there was many different ways to challenge the credibility of Marshall Hunter in this instance. Uh, it couldn't be sound strategy. We know this because sound strategy involves the concept of it. It embraces the use of established rules of evidence and procedure to avoid when possible the admissions of incriminating statements, harmful opinions and prejudicial facts. And we know this because we see counsel double down on the use of Mr. Cooley's usage of meth in this instance. Um, and that in reality prejudiced him. Uh, and it let the jury minds just, it's almost like saying that once you ring the bell, you can't unring it and the jury heard it. And that's what matters. In this case, there were many instances that counsel could have challenged your credibility. He could have impeached him on prior inconsistent statements. He could have used his prior felony convictions against him. But in this case, uh, to say that he was challenging the credibility by, um, eliciting his own clients, uh, usage of meth isn't a proper way or sound strategy in this case. Uh, we also know that, uh, we see instances where courts across the Illinois have overruled or, uh, overruled this kind of instances. We see in people, we Bailey where the court addressed the issue of when counsel elicits inculpatory evidence through cross examination, their council heard an officer say that they saw an unknown person approached the defendant and received money from him on several occasions. Uh, counsel didn't move the strike, but instead pressed the issue further. And the appellate court thought that this was ineffective. Assists counsel. This case is just like, uh, this was cross examination where it seems that the question did not result in an answer that, uh, was appropriate. In your words, the the question was, and he just said, Hey, come over, let's hang out. And the guys said, yes, smoke some meth that was volunteered. That wasn't a specific question at that point in time, was it? Um, even though this might have been volunteered regurgitated by the witness, uh, counsel, this goes back to lowering one on one. You don't ask the question that you don't know the answer to. Um, certainly, but this is cross examination of an adverse witness. Yes, you don't always get to know the answer to the question. But the question was, the question was, let's hang out. And the answer was, yeah. And then he added smoke some meth that that was volunteered. But your honor, if we keep looking at the record and the testimony, counsel didn't stop there. He pressed further. He pressed further on this questioning, saying, uh, where did you guys smoke inside the trailer? No, sir. We were smoking at his house. Certainly counsel. Once he heard, that's not exactly what the transcript says. The transcript was, what else did you see inside the home? I don't know. It was dark. I don't know. And then he said, you said you were smoking meth. Did you smoke meth inside the trailer? No, sir. Okay. We were smoking it at his house. So again, the answer was volunteered that included his client. And it seems like an argument could be made that he was attacking his either his credibility or trying to forge further into the factual situation of the surrounding events. What do you have to say to a trial strategy argument? But it certainly couldn't have been trial strategy. There could have been many different ways to test the credibility of the of this felony convictions. He could have been impeached through his prior inconsistent statements. Instead of listening more testimony of the drug usage, your honor, this inherently there's something we certainly there's something different than hearing if the jury heard, you know, this was cannabis, marijuana or alcohol. There's something inherently prejudicial with methamphetamine. As we said in our brief, rural counties across southern Illinois are affected by methamphetamine, uh, in particular now, actually. Um, and then through he was prejudiced because there wasn't overwhelming amount of evidence. The only thing that the state could set said in their, uh, brief was the 10 snips with the the initials of Mr Cooley. But we know that the evidence there's record in the evidence to suggest that he was given permission to store his items there. So it's not shocking that his items were found in there. His furniture, his, uh, paperwork. Uh, there was no sign of forced entry. He used to live there from 2014 and 2015 2015. So it's not shocking that his things were found in there. But what we know from the record is that Marshall Hunter, this particular witness had the motive, the means and the opportunity to commit this crime. Uh, he used to work at the salvage yard. He knew the procedures, the protocol. And but isn't that why his credibility becomes so important? Yes. But in this matter, council could have done different things that really test the veracity and the credibility of this particular witness and your argument about prior convictions and things of that nature. Is that in the record? I believe so. Your honor, Mr Hunter had prior convictions. Yes. Uh, for an instance, he was brought in from I. D. O. C. To testify in this trial. Um, so certainly the council could have brought that up. Uh, I believe he brought it up like momentarily at the beginning of the testimony, but he never pressed that further. And he never was going to say that was introduced to the right. But momentarily he could have gone further in the further question. But instead, but we know that he pressed this drug usage issue further. Uh, and we know that he also had the motive. That means the opportunity to commit this thing. Uh, we know this. The state, uh, called the owner of the salvage yard to testify, um, saying that they had the receipt with Mr Cooley's initials on it, but they didn't even follow the proper protocol. In this instance, they had they had to ask for the driver's license. They had to ask for the license plate of the car that was used to take the copper copper piping. But none of this was, um, introduced. What we know is that Marshall could have done this easily. He knew the protocol. He knew the employees. He knew what was expected of him to go and turn this in. He had he had his own substance abuse, uh, problem. So he could have easily saw this opportunity in that this this trail, this abandoned trailer and then cut out the pop the copper piping and then to fuel his own substance abuse. Your honor. Um, I see that my time is almost up. And for these reasons, uh, we asked you to remand this matter for a new trial. Any additional questions? Justice Cakes? No, thank you. Thank you, counsel. You'll have time for rebuttal happily. You may proceed. Thank you, Your Honor. Um, please, the court counsel. My name is Kara Jones, and I'm representing, uh, this state in this matter. Um, this case is a claim of ineffective assistance of counsel. And as you know, deference is given to strategy on the part of defense counsel. Um, and Justice Cates, I know I pointed this out in my brief and tying in with your questioning. The testimony that is being complained about was, in fact, not elicited by the defense counsel. It was volunteered gratuitously by Mr Hunter when he was essentially being attacked, and his credibility was being attacked. Um, it was clearly an attempt on him to put in doubt the defendant's credibility by attaching him. So, I mean, the defense counsel did not elicit this testimony. And when you're looking at trial strategy and looking at cross-examination, they want to take those isolated answers to questioning out of context. And that is not the way a counsel's performance is to be evaluated. It's supposed to be determined from the counsel's performance of his perspective at the time, rather than a lens of hindsight, and also in the context in which the questioning was made. If you look at the questioning and the testimony of Hunter, Marshall Hunter, in context, he testified that the defendant had called him and told him the defendant cut all the copper from the trailer next to the mom's residence, and he wanted Hunter to help him sell it. Hunter did work at Foster Salvage, so it makes sense that the defendant would try and contact him, but Hunter told him he didn't want to have anything to do with it. And, in fact, Mr. Hunter told the owner of the trailer, a friend of his, that the defendant was doing this. If he was truly wanting to take this copper and sell it on his own, it would make no logical sense for him to tell a friend of the owner, this is what's going on. But the defendant's theory of the case, which the defendant now continues to argue in his reply brief and before this court, that it was Hunter, the one that cut and sold it, and the defendant was simply storing his permission of the owner's girlfriend. Of course, there was ample testimony that established that the defendant did not have permission, that the girlfriend did not have authority to give permission, but the cross-examination was designed to support this theory and to challenge Hunter's ability to observe things, his memory, and his credibility. The cross-examination proceeded by first confirming that Hunter had been at the trailer. He didn't, Hunter denied that the defendant, that Hunter had, in fact, first asked the defendant about the copper. I mean, they were trying to point out that, or trying to establish that it was, in fact, Hunter who had this idea, not the defendant. Hunter had been brought into the courtroom in shackles, and the jury had already heard about his criminal record during direct examination, so there was no mystery that Hunter wasn't a good guy. So, counsel then proceeded to question testing Hunter's ability to observe and recall events. He testified he was shown this crawlspace. He first said that he didn't go into the trailer at all. Then he said, well, no, I was there for two seconds, and counsel capitalized on that inconsistency by drawing attention to that inconsistency. Then, the counsel then challenged the testimony about Hunter, and the counsel asked, why did you go to the trailer? And Hunter said, well, defendant asked me to come over. So, then that testimony was challenged, because apparently, according to the defendant's counsel, there had been a falling out between Hunter and the defendant, and they weren't actually on speaking terms. So, counsel asked him about that falling out, which, of course, would have led to the belief that why should Hunter be believed, because they were not even on speaking terms, so why would the defendant even call him to have him come over if they're not on speaking terms? Hunter denied that they had a falling out or that they were not speaking, but counsel persisted in that line of questioning and asked Hunter why he was there that day. And Hunter said, well, he asked me to come over, and he said, did he call you? Yeah. And he just said, hey, come over, let's hang out, and the answer was, yeah, smoke some meth. That was voluntary. It was not an answer to a question that was asked. So, you were smoking meth that day? Yeah, so was he. So, then counsel asked a series of questions as to what he actually saw, testing his ability to observe and recall what was inside the trailer when he was only there for two seconds. He said furniture, paperwork in a folder, but when he was pressed for more information, because we know from other witnesses there was a lot more going on in that trailer than what Hunter was testifying to, Hunter basically couldn't give any more information. He said, you know, it was dark. He couldn't see. So, that brought the counsel back to the question about smoking meth. Now, Illinois case law stands for the proposition that evidence of a witness's drug use is a significant factor in evaluating a witness's credibility because it is particularly productive of the witness's abilities to perceive and recall accurately. And evidence of drug addiction is admissible not only to impeach a witness's ability to perceive and recall or testify, to impeach such a witness's honesty and integrity. And, in fact, it's been found reversible error where courts refuse to allow cross-examination as the witness's drug use because it is a very important factor going to the general liability of his testimony. So, he returned to it. So, you said you were smoking meth. Did you smoke inside the trailer directed only to Hunter? The question was directed only to him. No, sir. Okay. And then he volunteers. We were smoking in his house. So, he then returned to his questioning as to what Hunter saw in the trailer. He couldn't give any additional information and reiterated that it was dark. And when asked about the condition of the trailer, he stated it had stuff in it. I don't know. Nobody was living there. It looked like. So, then counsel concluded his questioning and obtained further inconsistent testimony about the time Hunter spent in the trailer. The questioning was that he established again that first Hunter says he wasn't in the trailer at all. Then he was there for two seconds. Then he says we were there for five minutes, quote, tops. And he didn't see any cut copper in the trailer, only underneath. When viewed in context and viewed in light of what the theory of the case of the cross-examination was, it is clear that this was trial strategy to question him. And when he opened the door and gave him the ability to cross-examine him on drug use, which clearly goes to credibility and ability to observe and recall, he took advantage of it. But his questions were only and specifically pointed at the witness himself. I want to address a couple of things real quickly that they brought out. First of all, with regards to the receipt, they said that no proper protocol was followed. The testimony from the salvage owner was that the protocol for getting the driver's license, all that, the state only requires that when the amount being sold is more than $100. The receipt shows that it was sold for $44.60. So it would not have been fallen under the protocol for getting all that information. In fact, the owner said that the only reason that they did the receipt at all was for their own records. The testimony or the argument with regards to the rural counties and how this somehow prejudiced them because rural counties are affected, there's no testimony in this record that the jury was aware of any drug issues in this particular rural county. And on top of that, any biases that might be, could even be inferred to the jurors about the brief mention of meth use, the jury's instructed not to consider anything outside of the evidence. I want to address briefly prejudice and obviously I don't have time to go through everything, but I just want to point out that these statements, these gratuitous statements consisted of three brief comments within eight lines of text in cross-examination. There was a day and a half trial consisting of 150 pages of trial transcript. These were three comments made in eight lines of text. And Illinois case law establishes that no prejudices found where complaint of testimony is brief is not emphasized by the state. State didn't raise this in their closing argument, neither did the defendant. State didn't cross-examine him about any drug use on the behalf of the defendant. So in those circumstances, I've cited cases in my brief that stand for the does not establish prejudice under the Strickland test. And therefore the defendant has failed to meet his burden of proving both prongs of the Strickland for ineffective assistance to counsel. And we would ask that you affirm the judgment. Any questions, Justice Gates? All right. Rebuttal? Yes, Your Honor. Very briefly. Um, volunteer testimony or not, what matters in this case is what the jury heard. They might have heard that Marshall Hunter was also was smoking meth that day, but they heard that the defendant was smoking meth that day as well, and twice. In their argument, the state never addressed what the jury actually heard. And as I previously said, once they heard that, you can't unhear it. They already heard it. We know that there's plenty of case law out there. There's people v. Jackson, where the defense counsel listed testimony about an element of the charged offense that the state hadn't proven. There, the counsel was proven to be ineffective. People v. Fletcher, the defense counsel, listed testimony about the client's extensive criminal history that otherwise wouldn't be inadmissible. People v. Orda, defense counsel listed testimony about other drug transactions involving his client. Certainly, those cases are similar here, where we hear that the jury heard that Mr. Cooley was using meth twice in two instances. Certainly, once was a mistake, and it could have been corrected, but this was twice. Once the defense counsel heard it after one time, they could have done many other things to prevent any further testimony of Mr. Cooley's drug usage. Counsel, would you be making the same argument if Hunter would have said, me and the defendant shot up heroin or snorted coke? Certainly, yes, I would be doing the same argument, because all those drugs you just listed, methamphetamine, coke, heroin, there's something inherently prejudicial to those drugs that is attributed to them. Certainly, we wouldn't be having this argument if this was marijuana, given the landscape and the legislature's stance on it, or even alcohol. There's something just inherently prejudicial of the jury hearing marijuana, or even heroin, or cocaine, or those hard substances in this instance. And for those reasons, we ask you to remand this case for a new trial, your honors. Any final questions, Justice Gates? All right. Thank you, counsel. We will take this matter under advisement and issue a ruling in due course. Thank you.